

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MILTON PFEIFFER, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiff,<br>v.<br><br>QIAO XING UNIVERSAL TELEPHONE, INC., RUI LIN WU, AND ALBERT LEUNG<br><br>Defendants. | No. 07 CIV 7252<br>ECF CASE<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff alleges the following upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief based upon the investigation of plaintff's attorneys as to all other matters. The investigation includes the review and analysis of publicly filed documents of Qiao Xing Universal Telephone, Inc.'s ("Xing") public filings with the United States Securities and Exchange Commission ("SEC"), press releases, news articles and the review and analysis of accounting rules and related literature.

## SUMMARY OF ACTION

1. This is a class action brought on behalf of all investors who purchased the common stock of Xing between June 30, 2004 and July 16, 2007, inclusive (the "Class Period").

2. This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC by plaintiff on behalf of all those who purchased Xing securities during the Class Period to recover damages caused to the Class by defendants' violations of the securities laws.

3. Xing engages in the manufacture and distribution of telecommunications products primarily in China. It manufactures mobile phone handsets under CECT and COSUN Brands. The company also offers mobile phone accessories; terminals and equipment, including cord and cordless telephone sets, wireless fixed phones, Little Smart phones with removable cards and VOIP phones. The company has strategic partnerships with China Telecom, China Netcom, China Railcom, China Mobile and China Unicom. The Company's stock trades on NASDAQ.

4. During the Class Period, Xing touted itself to the investing public as a company with growing net sales and net income that reported its financial results in accordance with generally accepted accounting principles ("GAAP"). In fact, however, the Company's financial results were materially misstated and were not prepared in accordance with GAAP, and the Company's internal controls over financial reporting were hopelessly defective.

5. On July 17, 2007, before the opening bell, Xing made the following announcement:

> Qiao Xing Mobile Communication Co., Ltd. (QXMC), a consolidated subsidiary of the Company, has recently become a U.S. listed company through an initial public offering, or IPO. In connection with the audits of QXMC's financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified "that were not initially detected through the Company's internal control over financial reporting."
>
> As a result management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003. In the restated financial statements, net income was reduced by Rmb 3.8 million in 2005, Rmb 21.5 million in 2004, and Rmb 16.3 million in 2003.[1]

6. As of the result of Defendants' machinations, Xing overstated its reported net income for the years ended December 31, 2005 and 2004 by 2% and 93%, respectively. For the year ended December 31, 2003, Xing understated its reported net loss by 210%.

---

[1] "Rmb" refers to the Renminbi, the legal currency of China, and is also known as the "Yuan".

7.  Furthemore, on July 17, 2007, the Company filed its annual report for the year ended December 31, 2006 on Form 20-F with the SEC that disclosed more details concerning the restatement, including the Company's GAAP violations and deficiencies in internal controls over financial reporting.

8.  The Company's annual report on Form 20-F stated that "[M]anagement has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003" because the Company: (1) improperly accounted for the fair value of certain assets and liabilities assumed through certain acquisitions; (2) improperly reported certain sales revenue and costs of goods sold under EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent"; and (3) recognized losses in excess of the original guaranteed return on an equity investment in a 49%-owned entity.

9.  The Company attributed the misstatements in its financial reports to deficiencies in its system of internal controls over financial reporting, including:

- Insufficient complement of personnel with a level of accounting knowledge, experience and training in the application of the accounting principles generally accepted in the United States of America commensurate with the Company's financial reporting requirements;

- Ineffective controls to ensure that the appropriateness of valuation methods was adequately evaluated and any significant assumptions used were properly supported and documented (including those used by specialists engaged by the Company), and to ensure that presentation and disclosure of fair value measurements were made in accordance with the accounting principles generally accepted in the United States of America;

- Ineffective controls to identify and measure differences between the respective tax and financial reporting bases of certain assets and liabilities and to determine the applicable income tax rate to ensure that deferred taxes were accurately presented in the Company's consolidated financial statements; and

- Ineffective controls for revenue recognition with respect to recognizing the technical service income in the period when the service was rendered

and failing to recognize the revenue from the sales of co-operative products in accordance with EITF *99-19, Reporting Revenue Gross as a Principal versus Net as an Agent* on a net basis as service fee income.

10. In addition to the above referenced weaknesses in internal controls, management identified additional deficiencies in its internal controls, including: 1) the absence of an effective enterprise risk management system; 2) the absence of an effective anti-fraud program and whistleblower system; and 3) absence of an independent and effective internal audit function.

11. Therefore, the Company concluded that its "disclosure controls and procedures were not effective as of the end of the fiscal period covered by this Annual Report on Form 20-F (December 31, 2006), as a result of the material weaknesses in the Company's internal control over financial reporting."

12. In response to these revelations, the price of Xing stock declined from $13.97 per share at the close of trading on July 16, 2007, to close at $11.04 per share the next day, a decline of approximately 21 %, on extremely heavy trading volume.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to: (a) Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and (b) 28 U.S.C. §§ 1331 and 1337.

14. This action arises under and pursuant to: Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

15. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NASDAQ, a national securities exchange.

## PARTIES

16. Plaintiff Milton Pfeiffer purchased Xing securities during the Class Period, as set forth in the attached Certification, and was damaged thereby.

17. Defendant Xing is a corporation organized under the laws of the British Virgin Islands with its principal executive offices located at Qiao Xing Science Industrial Park, Huizhon City, Guangdong, China. Xing conducts business throughout the United States with retailers such as Wal-Mart, and other distributors.

18. Defendant Rui Lin Wu ("Wu") was, at all relevant times, Chairman, and Chief Executive Officer of Xing.

19. Defendant Albert Leung ("Leung") was, at all relevant times, Xing's Chief Financial Officer.

20. The individuals named as defendants in ¶¶18-19 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Xing's annual reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to--and were being concealed from--the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FALSE AND MISLEADING STATEMENTS DURING THE CLASS PERIOD

21. On June 30, 2004, the Company filed its annual report with the SEC on Form 20-F for the year ended December 31, 2003. The annual report was signed by Defendant Wu and reported net sales of Rmb 1.8 billion and a net loss of Rmb 7.73 million for the fiscal year ended December 31, 2003. The annual report stated that the consolidated financial statements were prepared in accordance with GAAP.

22. The 20-F for the year ended December 31, 2003 also included Sarbanes-Oxley certifications signed by Defendants Wu and Leung. In their respective certifications, the Individual Defendants represented, among other things, that "[b]ased on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made... not misleading."

23. On June 30, 2005, Xing issued a press release disclosing its financial results for the year ending December 31, 2004. The Company reported net sales of Rmb 2.0 billion and net income of Rmb 22.9 million. Defendant Wu boasted that "Net sales, income from operating and net income for 2004 were the highest since 2001 for the Company."

24. That same day, Xing filed its annual report with the SEC on Form 20-F for the year ended December 31, 2004. The annual report was signed by Defendant Wu, and included the financial results set forth at ¶ 23 above. The report further stated that the consolidated financial statements were prepared in accordance with GAAP.

25. The annual report also included Sarbanes-Oxley certifications signed by the Individual Defendants, which made similar representations as those referenced in ¶ 22.

26. On June 30, 2006, Xing filed its annual report with the SEC on Form 20-F for the year ended December 31, 2006. The Company reported net sales of Rmb 2.9 billion and net

income of Rmb 249 million. The report also represented that the consolidated financial statements were prepared in accordance with GAAP.

27. The annual report also included Sarbanes-Oxley certifications signed by the Individual Defendants, which made the same representations as those referenced in ¶ 22.

28. The statements referenced above in ¶¶ 21-27 were each materially false and misleading when issued because they misrepresented and failed to disclose the following material adverse facts: (a) the Company's financial statements were not prepared in accordance with GAAP; (b) the Company's internal controls over financial reporting were grossly defective; and (c) the Company's reported net income was materially overstated for the years ended December 31, 2004 and 2005 and the Company's reported net loss for the year ended December 31, 2003 was materially understated.

29. As discussed above, on July 17, 2007, before the market opened, Xing issued a press release and filed its annual report for the year ended December 31, 2006 that revealed that its prior financials contained material errors.

30. In response to these disclosures, on July 17, 2007, the price of Xing stock declined from $13.97 per share to $11.04 per share, on extraordinarily high trading volume.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons who purchased Xing common stock during the period from June 30, 2004 through July 16, 2007, inclusive (the "Class").

32. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at the present time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members of the Class located throughout the United States. Throughout the Class

Period, approximately 29 million shares of Xing common stock were outstanding, which were actively traded on the NASDAQ in an efficient market.

33. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein. Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously. The interests of the Class will be fairly and adequately protected by plaintiff. Plaintiff has no interests which are contrary to or in conflict with those of the Class that plaintiff seeks to represent.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by defendants' acts, and omissions as alleged herein;

    b. whether defendants misstated and/or omitted to state material facts in their public statements and filings with the SEC;

    c. whether defendants participated directly or indirectly in the course of conduct complained of herein; and

    d. whether the members of the Class have sustained damages and the proper measure of such damages.

36. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Xing's securities and operated as a fraud or deceit on purchasers of Xing securities during the Class Period by misrepresenting the Company's operating condition and future business prospects. Defendants achieved this by making positive statements about Xing's financial results while they knew that such financial results were false, as detailed herein. Later, however, when defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Xing stock fell precipitously as the prior artificial inflation came out of Xing stock price. As a result of their purchases of Xing securities during the Class Period, plaintiff and other members of the Class suffered economic loss, i.e., damages under the federal securities laws.

37. At all relevant times, the market for Xing securities was traded in an efficient market for the following reasons, among others:

    a. The Company's common stock met the requirements for public listing and was listed and actively traded on the NASDAQ, a highly efficient market;

    b. As a regulated issuer, the Company filed periodic public reports with the SEC; and

    c. The Company regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

38. As a result, the market for the Company's securities promptly digested current information with respect to Xing from all publicly available sources and reflected such information in the price of the Company's securities. Under these circumstances, all purchasers of the Company's securities during the Class Period suffered similar injury through their

9

purchase of the securities of Xing at artificially inflated prices and a presumption of reliance applies.

39. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## FIRST CLAIM FOR RELIEF

### For Violation of Section 10(b) of the 1934 Act and Rule 10b-5 Against All Defendants

40. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

41. Each of the defendants: (a) knew or recklessly disregarded material adverse nonpublic information about the Company's financial results and then-existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports, and other public representations of and about Xing.

42. During the Class Period, defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to

make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Xing stock during the Class Period.

44. Plaintiff and the Class, in reliance on the integrity of the market, paid artificially inflated prices for Xing common stock. Plaintiff and the Class would not have purchased Xing stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' false and misleading statements. Upon disclosure of the misrepresentations and omissions referenced above, the price of Xing fell, which caused the losses by which Plaintiff and the Class have been damaged.

## SECOND CLAIM FOR RELIEF

### For Violation of Section 20(a) of the 1934 Act Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act. By reason of their senior executive positions they had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.

47. By reason of such wrongful conduct, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of their wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Xing stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and such equitable/injunctive relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 14, 2007

                                        **POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS, LLP**

                                        By: _/s/ Jeremy_____
                                        Marc I. Gross (MG-8496)
                                        Jeremy A. Lieberman (JL-6130)
                                        100 Park Avenue, 26th Floor
                                        New York, New York 10017
                                        Tel: (212) 661-1100
                                        Fax: (212) 661-8665

                                        Patrick V. Dahlstrom (PD-5328)
                                        **POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS, LLP**
                                        1 One North LaSalle Street, Suite 2225
                                        Chicago, IL 60602
                                        Tel: (312) 377-1181
                                        Fax: (312) 377-1184

                                        *Attorneys for Plaintiff*

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1. I, Milton Pfeiffer, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2. I have reviewed a Complaint against Qiao Xing Universal Telephone, Inc. ("Qiao Xing"), and authorize a filing of a comparable complaint on my behalf.

3. I did not purchase my Qiao Xing securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4. I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Pomerantz Firm will exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5. To the best of my current knowledge, the attached sheet lists all of my purchases and sales in Qiao Xing securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

In re Lattice Semiconductor Corp. Sec. Litig., 04-01255 (D. Or. 2004)

Pfeiffer v. Feinberg, et. al., 04-cv-8433 (S.D.N.Y. 2004)

In re Nortel Networks Corp. Sec. Litig., 05-01659 (S.D.N.Y. 2005)

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8. The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed 7/23/07, at STATON ISLAND NY 10314
  (Date)                    (City, State)

_____(signature)_____
(Signature)

MILTON PREVITERA
(Type or Print Name)

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|---|---|---|---|
| 2/5/07 | PURCHASE | 50 | 13.44 |
| 3/5/07 | PURCHASE | 100 | 15.11 |
| 5/1/07 | PURCHASE | 100 | 15.30 |
| 5/4/07 | PURCHASE | 50 | 14.38 |
| 5/3/07 | PURCHASE | 100 | 13.44 |
| 6/20/07 | PURCHASE | 100 | 12.82 |